UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| DANA INCORPORATED, | ) |
| Plaintiff, | ) Civil Action No. 5:19-cv-445-CHB |
| v. | ) **MEMORANDUM OPINION AND ORDER** |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL UNION NO. 3062, | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the parties' cross Motions for Summary Judgment. [R. 13; R. 14] Defendant/Counterclaimant The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union No. 3062 ("the Union") moved for summary judgment to uphold and enforce the arbitration award in a labor dispute. [R. 13] Plaintiff Dana Incorporated ("Dana" or "Company") moved for summary judgment to vacate the arbitration award. [R. 14] Both parties filed Responses and Replies to those Responses. [R. 15; R. 16; R. 17; R. 18] For the reasons stated below, the Court will grant the Union's Cross Motion for Summary Judgment and deny Dana's Cross Motion for Summary Judgment.

### I.   Underlying Dispute

The parties contest an arbitration award stemming from a labor dispute. The key facts of the dispute are as follows: Dana employee Brandon Akerman, a member of the Union, was employed pursuant to a Last Chance Agreement ("the LCA"). The LCA provided that Akerman must "adhere to the general plant safety rules and general rules of conduct as well as the attendance policy." [R. 13-3] It further provided that "[f]ull compliance with the requirements of

this agreement constitutes your conditions of continued employment. Failure to comply with all the terms and conditions will result in discharge." [*Id.*] Finally, the LCA specified that "[i]n the event that you violate the terms of this last chance agreement and your employment is terminated, you will not have access to the grievance procedure unless there is a question regarding the legitimacy of the termination." [R. 1-6, p. 4; R. 13 p.3] On May 21, 2018, Mr. Akerman did not clean up his work space, got into a heated argument with his supervisor, and was sent home from his shift early, with instructions to call the Human Resources office. [R. 1-6, p. 6] Akerman first received two written warnings from his supervisor before being sent home. [*Id.* at 28] He was fired the next day for violating the terms of the LCA. [*Id.* at 6] The Union filed a grievance for Mr. Akerman's termination, which was heard by an arbitrator. [*Id.*]

## II.      Arbitration Award

The parties appointed Daniel M. Kininmonth ("the Arbitrator") to decide the question of "the legitimacy of [Mr. Akerman's] termination" under the LCA. [R. 13, p. 2; R. 13-3] In a 35-page opinion, the Arbitrator determined Mr. Akerman was improperly fired because the Company subjected him to two punishments for the same infraction and reinstated him to his previous position, along with back pay and other benefits. [R. 1-6, pp. 33–34] The Arbitrator found as follows. In Section A, the Arbitrator held that the LCA should be enforced as written. [*Id.* at 20–21] He then found that Mr. Akerman violated the LCA by not cleaning up his work space. [*Id.* at 22] The Arbitrator acknowledged that if the LCA prohibits certain violations, the employer may terminate the employee for the conduct. [*Id.* at 21] In such cases, the arbitrator is typically limited to determining if the employee committed the type of misconduct and "cannot consider the proportionality of the penalty and set aside the discharge" or "matters in mitigation of the penalty." [*Id.*]

After acknowledging these principles, the Arbitrator turned to interpreting the language of the LCA. He observed that "the just cause requirement is so fundamental, an arbitrator should not, without express language, presume the parties intended to abandon it." [*Id.*] (quoting *The Common Law of the Workplace* 173–75 (Theodore J. St. Antoine ed., 2005)). He noted that although the specific language of the LCA did not contain a "just cause" provision, it did not expressly exclude the principle of "just cause." [*Id.*] Reasoning that just cause is so universally observed that it has "become traditional for arbitrators to infer its existence even where the precise words are not in the contract," the Arbitrator applied the principle of "just cause" to the LCA. [*Id.* at 22] Citing to case law,[1] the Arbitrator reasoned that "[d]ue process is a part of 'just cause,'" and "[d]ouble jeopardy is a part of 'due process.'" [*Id.* at 22 n.6, 23]

After finding that "just cause" and its related procedural protections had not been written out of the contract, the Arbitrator, in Section B, examined the Union's claim that Mr. Akerman's termination violated procedural due process because he had no opportunity to respond to the allegations against him. Once again the Arbitrator found against the Union because any inability to respond was the result of Akerman's own misconduct. [*Id.* at 23–24]

In Section C, the Arbitrator examined the Union's claim that the firing constituted double jeopardy. [*Id.* at 24–31] First, he explained double jeopardy in the context of labor arbitration (being disciplined twice for the same infraction). [*Id.* at 25–28, 30] Next, the Arbitrator examined whether double jeopardy applied in the context of an LCA. He noted that double jeopardy was either a "mitigating factor" — which could not apply to an LCA — or an "affirmative defense," which could apply. [*Id.* at 28–29] Citing cases that refer to double jeopardy as a "defense," the Arbitrator held that double jeopardy was an affirmative defense, so

---

[1] "Case law" in the arbitration decision refers to previous arbitration decisions, unless otherwise noted.

- 3 -

it applied, even in the context of an LCA. [*Id.* at 29] Applying these concepts to the facts at hand, he determined that Akerman was subjected to double jeopardy: he was terminated under the LCA after first being disciplined by a "written warning." [*Id.* at 30] Because his firing lacked the protections of procedural due process and "just cause," the Arbitrator vacated it. [*Id.* at 31–32]

### III. Position of the Parties

Dana moved this Court to vacate the arbitration decision. [R. 1, p. 5] Dana makes two claims. First, it claims that the Arbitrator acted outside the scope of his authority by examining concepts of double jeopardy in the context of an LCA, and by holding that double jeopardy was an affirmative defense, both without citing to appropriate authority. [R. 14-1, pp. 6–7] Second, it claims that the Arbitrator did not carry out his role of interpreting the LCA but instead instituted his own notions of "just cause" industrial justice, contrary to controlling Sixth Circuit authority. [*Id.* pp. 7–8]

The Union claims that the Arbitrator did not step outside of his authority under the LCA; instead, the LCA, which was drafted by the Company, mandated that the Arbitrator determine whether Mr. Akerman's firing was "legitimate." This undefined term reasonably included the concepts of just cause and attendant procedural due process protections including double jeopardy. [R. 13-1, pp. 4–5] Relatedly, it claims that the Arbitrator's consideration of the legitimacy of the firing was simply the Arbitrator doing exactly what he was called to do: interpret and apply the terms of the LCA. [*Id.* at 6–7]

### IV. Standard of Review

The standard for summary judgment is well known. Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law. Fed. R. Civ. P. 56. In considering cross motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "No genuine issue for trial exists when 'the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.'" *Tompkin v. Am. Brands*, 219 F.3d 566, 571 (6th Cir. 2000) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

Courts reviewing arbitration decisions apply an extremely deferential standard. The Sixth Circuit, sitting en banc, acknowledged that "judicial consideration of the merits of a dispute is the rare exception, not the rule." *Mich. Family Res. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc). "[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Id.* An arbitrator's decision should only be overturned when it so 'ignor[ant]' of the contract's 'plain language' as to make implausible any contention that the arbitrator was construing the contract." *Id.* (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).

Courts only review that the arbitrator "(1) did not commit fraud or other dishonesty, (2) resolved a dispute fairly committed to arbitration, and (3) at least arguably construed the [employment contract]." *Econ. Linen & Towel Serv., Inc. v. Int'l Brotherhood of Teamsters, Teamsters Local Union 637*, 917 F.3d 512, 513 (6th Cir. 2019). An arbitration decision may be reversed for exceeding the arbitrator's authority "only when the [contract] does not commit the dispute to arbitration." *Mich. Family Res.*, 475 F.3d at 756. And it may be reversed for not

arguably construing the contract only when it is "so untethered from the terms of the contract that it conveys a lack of good-faith interpretation." *Zeon Chems., L.P. v. United Food & Com. Workers, Local 72D*, 949 F.3d 980, 983 (6th Cir. 2020) (citations and internal quotation marks omitted).

## V.     Discussion

Here, there is no allegation of fraud or dishonesty. Dana argues that the Arbitrator acted outside the scope of his authority and that he did not arguably construe the LCA. Since the parties present roughly the same arguments for these two issues, they will be examined together.

Considering the "modest hurdle" that arbitrators must clear, the Court concludes that the Arbitrator here arguably construed and applied the contract in a way that did not exceed his authority. The express language of the LCA provided a singular basis for grievance: to determine the "legitimacy of the termination." [R. 13-3] Dana argues this issue constrained the Arbitrator to determine only whether Akerman was guilty or not guilty of violating the LCA, as evinced by the Arbitrator's own framing of the issue in his decision: "Whether the Grievant violated the Last Chance Agreement and if not, what is the remedy?" [R. 14-1, p. 5; R. 1-6, p. 2] But this argument is belied by the LCA's language containing the broad, undefined scope of "the *legitimacy* of the termination." [R. 13-3 (emphasis added)] Moreover, the Arbitrator's statement of the issue, even accepting Dana's interpretation of it, is not dispositive (especially given his singular mandate under the LCA). The pivotal issue is not whether the Arbitrator framed the issue comprehensively, or even whether he correctly interpreted or applied the term "legitimacy" (or even mentioned it). The key inquiry is whether he exceeded the authority granted him by the parties to resolve their dispute. The LCA expressly granted him the authority to determine the "legitimacy of [Ackerman's] termination," and the Court finds he did not exceed his authority.

The Court further finds that the Arbitrator was, at a minimum, "arguably construing or applying" the LCA when he applied "just cause" and related procedural protections to the agreement. *Zeon Chemicals*, 949 F.3d at 983 (quoting *Misco, Inc.*, 484 U.S. at 38). His decision had "all the hallmarks of interpretation." *Id*. (quoting *Mich. Family*, 475 F.3d at 754). He undertook a fair process, outlining his reasoning in a 35-page written opinion. He explained the facts surrounding the dispute in detail and cited to the relevant provisions of the LCA and related documents. [R. 1-6, pp. 4–5] He explained the position of each of the parties and referenced the language of the LCA, including the provisions Akerman was alleged to have violated. [R. 1-6, pp. 13–17] The Arbitrator started with the validity of the LCA itself — passing up opportunities to hold the LCA invalid — and found against the Union that Mr. Akerman violated its terms by failing to clean up his work area and that Akerman was to blame for any lack of process to respond to the allegations against him. [R. 1-6, pp. 20–22]

Tasked with determining the "legitimacy" of the termination, he then went on to analyze whether just cause and related procedural protections (such as double jeopardy) remained a part of the contract. Although the Arbitrator did not announce he was interpreting and applying the "legitimacy" provision of the LCA, that is exactly what he did. *See Mich. Family*, 475 F.3d at 753 ("[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that."). The *only* basis for which a grievance could be filed was one questioning the legitimacy of Ackerman's termination:

> In the event that you violate the terms of this Last Chance Agreement and your employment is terminated, you will not have access to the grievance procedure *unless there is a question regarding the legitimacy of the termination*."

[R. 1-6, p. 4 (emphasis added)]  Nothing else.  He confirmed he "had not ignored the LCA," [*Id.* at. 31, n.13], and noted that "the last chance agreement in this case does not exclude the principle of 'just cause.'" [R.1-6, p. 21]  That is, his reasoning was not "untethered" to the language of the agreement.

He found that just cause remained part of the LCA and held that related procedural due process requirements applied, analogizing particularly to *First Student*, 132 Lab. Arb. Rep. (BL) 777 (2013) (Landau, Arb.), which found a due process violation when an employee was fired pursuant to a "last warning" agreement.  [R. 1-6, pp. 23–24]  Next, he found that Mr. Akerman was subjected to double jeopardy by analogizing to previous labor arbitration decisions. [*Id.* at 25–28, 30]  Then, noting disagreement with some arbitration decisions classifying double jeopardy as a mitigating factor, he held that double jeopardy is an affirmative defense — based on other labor arbitration decisions referring to double jeopardy as a defense. [*Id.* at 29–30]  Finally, he determined that, given that the firing violated double jeopardy principles and did not have just cause, the best course of action was simply to reinstate the employee. [*Id.* at 31–32]  That is, he determined that the firing was not "legitimate" because it offended just cause and procedural protections against double punishment for the same infraction.

Dana argues that "just cause" and related notions of due process were never part of the LCA.  It posits that "legitimacy" can only mean determining whether Akerman violated the terms of the LCA (that is, did Akerman fail to clean up his work area or not?), and if he did, his termination is automatic.  Certainly Dana's argument on what "legitimacy" means is plausible (and might even be correct).  But so is the Union's interpretation and the Arbitrator's application of it.

Dana's argument is analogous to one advanced and rejected by the Sixth Circuit in *Zeon Chemicals,* 949 F.3d at 983–84. There, the Sixth Circuit reinstituted an arbitration decision that had been vacated by the district court, finding that the opinion "clear[ed] [the] modest hurdle" of review. *Id.* at 983. The arbitrator read a "just cause" requirement into an attendance policy (even though it expressly stated accumulating twelve points was "cause for termination") then upheld the arbitrator's decision finding the employee was improperly fired. *Id.* The *Zeon Chemicals* court conceded that the arbitration decision contained "some eyesores," but reasoned that given the potential for conflicting interpretations between the collective bargaining agreement (which contained a just cause provision) and the attendance policy (which did not), the arbitrator's application of just cause to the attendance policy was "plausible." *Id.* at 983.

Unlike *Zeon Chemicals*, where the arbitrator applied a just cause standard to the attendance policy where none expressly existed, here, the language of the LCA itself "plausibly" contained its own "just cause" provision. The parties agreed to a grievance procedure to determine the "legitimacy of the termination," whatever that means. [R. 13-3] "Legitimate" encompasses several meanings, including "fair and reasonable." *Legitimate*, Merriam-Webster, https://www.merriam-webster.com/dictionary/legitimate (last visited Sept. 18, 2020); *see also Legitimate*, Black's Law Dictionary (10th ed. 2014) ("genuine; valid"); *Legitimate*, Oxford English Dictionary, https://www.oed.com/view/Entry/107112#eid39648495 (last visited Sept. 18, 2020) ("sanctioned or authorized by law or right principles"). Given the potential scope of this term, it is certainly plausible that "legitimacy" stood as a proxy for "just cause" and the attendant procedural protections recognized by arbitrators and courts, including the notion that an employee may not be punished twice for the same infraction. It is also equally plausible, as Dana argues, that "legitimacy" meant the Arbitrator was to determine only whether Akerman

was guilty or innocent of the alleged infraction under the LCA. But this dispute over the meaning of "legitimacy" did not remove the dispute from the Arbitrator's authority. Rather, the ambiguity in the LCA "permitted, indeed required, the arbitrator to engage in construction of the agreement," which is all this Court is asked to determine. *Michigan Family*, 475 F.3d at 755. *Manville v. International Brotherhood of Teamsters, Local 20*, 784 F. App'x 425 (6th Cir. 2019) does not change the analysis: *Manville* stands for the proposition that an arbitrator acts within the scope of his authority when he sticks to the "precise dispute" agreed upon by the parties, but it does not speak to whether an arbitrator acts outside of the scope of his authority when interpreting a provision that may be contained within an LCA. *Id.* at 429.

Dana argues that the Arbitrator tacked to his own notions of fairness instead of interpreting the contract, claiming that he cited to no authority when applying double jeopardy to an LCA, and no authority but the U.S. Constitution to call it an affirmative defense. [R. 14-1, p. 6] But this is simply not true. The Arbitrator couched double jeopardy within the larger component of procedural protections often associated with just cause, which, as shown earlier in his decision, had been applied to last-chance agreements. [R. 1-6, pp. 23–24, 29–30] Further, the Sixth Circuit and other courts have recognized at least some procedural protections attendant to just cause. *See, e.g.*, *Titan Tire Corp. of Bryan v. United Steelworkers of Am., Local 890L*, 656 F.3d 368, 370 (6th Cir. 2011) (legitimating an arbitrator's decision to vacate a firing based on procedural flaws); *Int'l Ass'n of Sheet Metal, Air, Rail & Transportation Workers, Transportation Div. v. Canadian Nat'l Ry. Co.*, No. 1:19-cv-01373, 2020 WL 3104911 (N.D. Ohio June 11, 2020) (same, based on the employer firing the employee after first disciplining him with a demotion). Although *Zeon Chemicals* raised a suspicious eyebrow over the arbitrator's reference to "substantive due process" concerns, it noted that the arbitrator really

seemed to be "referring to *process-driven* considerations, *something arbitrators have fairly considered before.*" *Id.* at 986 (emphasis added). The Court went on to note, "[o]ur decisions have acknowledged the *similarities between fair procedural considerations and just cause considerations.*" *Id.* (emphasis added) (citing *MGM Grand Detroit, LLC v. Int'l Union, United Auto., Aero. & Agric. Implement Workers of Am.*, 495 F. App'x 646, 649–51 (6th Cir. 2012)). Based on the Sixth Circuit's express recognition of the overlap between procedural considerations and just cause considerations, this Court cannot find that the Arbitrator's decision was "so untethered" from the terms of the LCA, or the law, that it conveys a lack of "good faith interpretation." *Mich. Family*, 475 F.3d at 753–54.

Dana argues that arbitrators may not examine just cause under last-chance agreements, pursuant to the Sixth Circuit rulings in *Ohio Edison Co. v. Ohio Edison Joint Council*, 947 F.2d 786, 787 (6th Cir. 1991) and *Bakers Union Factory No. 326 v. ITT Cont'l Baking Co.*, 749 F.2d 350, 351 (6th Cir. 1984). [R. 14-1, p. 5] But the Arbitrator distinguished those cases as involving instances where the arbitrator failed to follow the terms of the last chance agreement at issue by mitigating the employee's termination (when the agreement clearly called for termination). Instead, the Arbitrator advised that, he "had not ignored the LCA," [R. 1-6, p. 31, n. 13], and that the LCA "does not exclude the principle of 'just cause.'" [*Id.*. at 21] Although the LCA here called for termination, the Arbitrator, after finding "just cause" and related procedural protections remained, found a procedural double jeopardy violation (which he deemed an affirmative defense, not a mitigating factor) when the Company punished Akerman twice for the same conduct. [*Id.* at 29–30] This Court need not decide whether that distinction is too fleeting to matter. Perhaps the jump from "defense" to "affirmative defense" was a mistake.

Indeed, this Court may have reached a different conclusion, but this Court's "task is not to choose the best interpretation." *Zeon Chemicals*, 949 F.3d at 983.

Finally, Dana argues that the Arbitrator went outside of his authority in considering affirmative defenses because the LCA did not allow for an affirmative defense. [R. 18, p. 2] True, but the LCA did not expressly disallow affirmative defenses either. The Company drafted the LCA and could have easily defined the term "legitimacy" to avoid this dispute and foreclose any procedural due process arguments. *See Zeon Chemicals*, 949 F.3d at 985 ("Had the company clarified two features of this agreement, we do not see how the arbitrator could have plausibly contradicted them.") Given the inartful language, the Court will "leave the parties to what they bargained for." *Zeon Chemicals*, 949 F.3d at 982. Here, they tasked the Arbitrator with determining the legitimacy of Akerman's discharge. This is precisely what he did. He applied the terms of the LCA (including its "legitimacy" provision) to the facts of Ackerman's discharge. Whether he reached the right outcome is neither here nor there. The parties "bargained for an arbitrator's interpretation of the contract, not a federal judge's." *Econ. Linen*, 917 F.3d at 513. With all of Dana's arguments met, the Court finds that the Arbitrator did not act outside the scope of his authority and that he was, at a minimum, "arguably construing or applying the contract." *Zeon Chemicals*, 949 F.3d at 983 (quoting *Misco, Inc.*, 484 U.S. at 38). Given the deferential standard, the Court will not disturb his decision.

## VI.     Conclusion

For the foregoing reasons the Court grants Defendant Union's Cross Motion for Summary Judgment and denies Plaintiff Dana's Cross Motion for Summary Judgment. Accordingly, and with the Court being otherwise sufficiently advised,

**IT IS HEREBY ORDERED** as follows:

    1.       Defendant's Cross Motion for Summary Judgment [**R. 13**] is **GRANTED**.

    2.       Plaintiff's Cross Motion for Summary Judgment [**R. 14**] is **DENIED**.

    3.       A separate Judgment will be entered consistent with this Order.

This the 23rd day of September, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

cc:    Counsel of record